```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA          :

     -v.-                         :
                                            10 Cr. 145 (AKH)
WAYNE MITCHELL,                   :

          Defendant.              :

- - - - - - - - - - - - - - - - - -X
```

**SENTENCING MEMORANDUM OF THE UNITED STATES**

```
                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York
                              One St. Andrew's Plaza
                              New York, New York 10007

Michael Bosworth
Assistant United States Attorney
     -Of Counsel-
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA         :

    -v.-                         :
                                           10 Cr. 145 (AKH)
WAYNE MITCHELL,                  :

           Defendant.            :

- - - - - - - - - - - - - - - - -X
```

## INTRODUCTION

The Government respectfully submits this memorandum in connection with sentencing in this case, which is currently scheduled for Wednesday, January 5, 2011, at 11:30 A.M. The Government contends that in the defendant's case, a sentence within the applicable Guidelines range of 24-30 months would be sufficient, but not greater than necessary, to satisfy the factors set forth in Title 18, United States Code, Section 3553(a).

## BACKGROUND

From in or about 1997 until June 2008, Wayne Mitchell, the defendant, served as the full-time president of Local 14170 of the Communications Workers of America (the "Local"), a union representing hundreds of workers employed by New York's largest newspapers. As president, the defendant was responsible for promoting the interests of the hard-working members of the Local, conducting collective bargaining on their behalf, and responsibly

-1-

managing the finances of the Local, including the hundreds of thousands of dollars of union dues the Local collected annually.

However, beginning in October 2004 and continuing every single month through at least April 2008, the defendant systematically embezzled funds from the Local for his own personal benefit.  He did so by each of two methods: <u>first</u>, he caused $197,490 in unauthorized payroll checks to be issued to him, often receiving multiple unauthorized payroll checks in the same month (most commonly in the amounts of $2,850 and $1,425); <u>second</u>, he falsely claimed $176,065 worth of personal expenses as union-related bills.  All told, the defendant embezzled a total of $373,555 from the Local between October 2004 and April 2008.

In connection with this conduct, on December 14, 2009, the defendant was charged in Complaint 09 Mag. 2702 with embezzling the assets of a labor organization, in violation of Title 29, United States Code, Section 501(c).  On February 24, 2010, the defendant was charged with that same offense in a one-count Information.  Subsequently, on April 21, 2010, the defendant pled guilty to Count One of the Information.  Although the defendant did not plead guilty pursuant to an agreement with the Government, prior to his plea, the Government provided him with a *Pimentel* letter dated April 16, 2010, which set forth, *inter alia*, the Government's view of how the United States Sentencing Guidelines ("U.S.S.G.") apply to his case.  Specifically, the

*Pimentel* letter provided for: a base offense level of 6 pursuant to U.S.S.G. § 2B1.1(a); a 12-level increase because the loss amount was between $200,000 and $400,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(G); a two-level increase because the defendant abused a position of trust, pursuant to U.S.S.G. § 3B1.3; and a three-level reduction for acceptance of responsibility, yielding a Total Offense Level of 17.  Because the defendant is in Criminal History Category I, according to the *Pimentel* letter, the applicable Guidelines range is 24-30 months' imprisonment.

   The Presentence Investigation Report ("PSR") contains precisely the same Guidelines calculation that was set forth in the *Pimentel* letter, namely, a Total Offense Level of 17 which, at Criminal History Category I, results in an applicable Guidelines range of 24 to 30 months' imprisonment.  The defendant has not objected to the Guidelines calculation set forth in the PSR.  The Probation Office has recommended that the defendant receive a sentence of 18 months' imprisonment; a $7,500 fine; three years' supervised release; a mandatory $100 special assessment; and a restitution amount to be determined.

### A SENTENCE WITHIN THE GUIDELINES IS REASONABLE

   A sentence within the applicable Guidelines range of 24 to 30 months' imprisonment would be reasonable and sufficient, but not greater than necessary, given (1)  the nature and circumstances of the offense and the history and characteristics

-3-

of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and (B) to afford adequate deterrence to criminal conduct. See 18 U.S.C. § 3553(a)(1), (2)(A)-(B).

The defendant stands convicted of a very serious offense, embezzlement of union funds.  Three things above all stand out about the nature and circumstances of the offense.

First, the defendant was not simply associated with the union whose funds he embezzled; he was the president, the individual that hundreds of hard-working men and women trusted to protect their interests and safeguard their collective well-being.  He abused their trust and sacrificed their own security to satisfy his own needs.

Second, the defendant's criminal conduct was far from aberrational.  On the contrary, every single month for a period of three and a half years, the defendant systematically looted the Local's coffers, taking, on average, nearly $9,000 each of those months.  Between October 2004 and April 2008, the defendant caused $197,490 in unauthorized payroll checks to be issued to himself and, during this same period, falsely claimed, as union-related expenses, an additional $176,065 worth of personal expenses.  In total, the defendant embezzled a staggering $373,555.

<u>Third and finally</u>, the defendant's conduct resulted in concrete and not merely theoretical harm.  The nearly 20 victim impact statements submitted to the Court provide a clear and disturbing picture of the pain and suffering that the defendant has caused the Local and its members.  Most notably, although the defendant did not steal directly from any health benefit fund, the Local has been forced to dramatically raise the fees charged for members' health insurance because of the financial instability more generally caused by the defendant's conduct.  This rise in health insurance costs has had a devastating effect on the members and their families.

To take but a few examples: Kenneth Elder, a member of the Local, wrote that because of the defendant's conduct, the Local told him he would no longer receive family health coverage and, as a result, he has been forced to pay exorbitant fees to continue the insurance because his wife may have breast cancer. Michael Montecalvo, another member, wrote that in order to pay for health insurance, he now must use the money he had set aside for college tuition for his children. Thomas Miles wrote that to sustain medical coverage for his family, he will be forced to cash in his 401K.  Steven Frank, another member, wrote that, to provide for the immediate care of his daughter – who has a neurological disorder and epilepsy – he will have to use the funds he had set aside for her long-term care.  Patricia

-5-

Quartararo wrote that, as a result of the defendant's conduct, she too is struggling financially, has had to apply for a mortgage modification, and seriously worries about foreclosure. And Jeff Rechenbach, the Secretary-Treasurer of the CWA, captured the systemic harm that the defendant's conduct has caused for the Local as a whole, noting that "as a direct result of Mr. Mitchell's embezzlement, Mailers 6 has faced severe financial difficulties ... [that] continue to this day, and undoubtedly will take several years to repair."

Defense counsel has asked the Court to impose a sentence that does not involve any formal incarceration, citing, among other things, the defendant's efforts to cooperate with law enforcement, his acceptance of responsibility, and his medical conditions (high blood pressure, poor circulation, obesity, and high cholesterol). These factors should, of course, be considered by the Court when imposing sentence. And the Government acknowledges that the defendant did indeed assist law enforcement prior to being charged in this case, meeting repeatedly with an investigator from the U.S. Department of Labor and reviewing financial records with and for the investigator in order to identify all the monies embezzled from the Local. During the meetings with law enforcement, the defendant was, according to the investigator, courteous, respectful, and truthful. And the defendant's review of financial records helped

-6-

enable law enforcement to determine the full scope of his embezzlement, namely, $373,555.  It bears noting, however, that the Probation Office – even after considering, inter alia, the defendant's efforts to assist law enforcement – recommends the substantial sentence of 18 months' imprisonment in order to address the sentencing objectives of punishment, deterrence, and promotion of respect for the law.

## **RESTITUTION**

The Government also respectfully submits that the Court should impose restitution in this case in the amount of $373,555.00, that being the amount of money embezzled by the defendant.  The restitution victim is:

>   New York Mailers Union No. 6,
>   Local 14170 of the Communications Workers of America, AFL-CIO
>   352 Seventh Avenue
>   New York, NY 10001

The Government notes that $80,000 of the $373,555 is due to the Fidelity and Deposit Company of Maryland ("F&D"), which paid the Local $80,000 pursuant to the Local's insurance policy.  However, consistent with the Local's contractual agreement with F&D, the Local should be named the restitution victim for the entire $373,555 and, after a certain threshold of payments has been crossed, the Local will simply begin forwarding the remaining restitution checks to F&D.

-7-

**CONCLUSION**

For the reasons described above, the Government respectfully submits that the Court should impose a sentence within the applicable Guidelines range of 24-30 months' imprisonment and should order restitution in the amount of $373,555.00.

Dated:    New York, New York
          December 30, 2010

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York


                              _____/s/_____
                              Michael Bosworth
                              Assistant United States Attorneys
                              Tel.: (212) 637-1079